### MOORE v. RABB.

(Court of Civil Appeals of Texas. Galveston. June 21, 1913.)

1. APPEAL AND ERROR (§ 282*)—REVIEW—MOTION FOR NEW TRIAL.

Rule 71a, District Court Rules, as amended January 24, 1912 (145 S. W. vii), provides that a motion for a new trial is necessary to an appeal in all cases, unless the error is fundamental, except in such cases as the statute does not require a motion. Rev. St. 1895, art. 1333, provides that no motion for a new trial need be filed where the case is tried by the court and conclusions of fact and of law are prepared and filed by the court. *Held*, that a motion for a new trial is not a prerequisite to an appeal, where conclusions of fact and law are filed by the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1662–1665; Dec. Dig. § 282.*]

2. APPEAL AND ERROR (§ 1010*)—FINDING—REVIEW.

The court trying the facts as a jury is the judge of the weight and credibility of the evidence, and its finding will not be disturbed on appeal, unless the weight and preponderance of the evidence is so great against it that it cannot be accounted for upon any proper view of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. § 1010.*]

3. SEQUESTRATION (§ 18*)—TRIAL OF RIGHT OF PROPERTY—JUDGMENT AGAINST CLAIMANT.

Rev. St. 1895, art. 5307, provides that where any claimant of property fails to establish his right to same, judgment shall be rendered against him and his sureties for the value of the property, with interest, from the date of the filing of the bond, and article 5304 provides that if a claimant fails to establish his right to the property, the court shall render judgment for 10 per cent. damages in addition to the value of the property. *Held*, that these statutes

do not authorize the recovery of the value of the rental and hire of the property while held under the claimant's bond.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 38–41; Dec. Dig. § 18.*]

4. SEQUESTRATION (§ 18*)—TRIAL OF RIGHT OF PROPERTY—JUDGMENT AGAINST CLAIMANT.

As Rev. St. 1895, art. 5310, provides that a claimant, if he elects,' can satisfy the judgment rendered against him for the value of the property, by a return of the property within 10 days, and by paying in addition thereto the reasonable value of the rent and hire of the property while so held under the claimant's bond, the court should, in rendering judgment for the value of the property, also fix the amount of the reasonable value of the rent and hire of the property.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 38–41; Dec. Dig. § 18.*]

Appeal from District Court, Jefferson County; J. W. Lawhon, Special Judge.

Proceeding to try title to personal property by W. T. Moore, claimant, against A. P. Rabb, defendant. Judgment for defendant and claimant appeals. Affirmed.

Watts & Wheat, of Beaumont, for appellant. Dougherty & Gordon and P. A. Dowlen, all of Beaumont, for appellee.

REESE, J. In cause No. 7,707 A. P. Rabb sued B. F. Moore, F. M. Watson, B. B. Watson, T. L. Watson, and W. P. Zindall, to recover the title and possession of a certain boiler and engine valued at $1,200. A writ of sequestration was sued out and levied upon the property, whereupon W. T. Moore filed a claimant's oath and bond for the trial of the right of property. Issues were made up under direction of the court, and a trial without a jury resulted in a judgment for the defendant against the claimant and the sureties on his bond for $1,000, the value of the engine and boiler. The following findings of fact by the trial court are authorized by the evidence, and are hereby adopted:

"First. I find that on March 6, 1907, Catherine Stengele and W. T. Moore, claimant, entered into a written lease contract under the terms of which Catherine Stengele leased to W. T. Moore, for a period of five years, ending December 1, 1911, all lands in the S. Morris league survey known as the Stengele farm, containing about 1,400 acres, together with all improvements on the date located thereon, or to be located thereon during the term of said lease; also an undivided interest in a tract of land out of the Joshua Dyches survey, and known as the Van Wormer and Stengele lands, containing about 300 acres, more or less, for the purpose of cultivating rice thereon in particular, and for the further purpose of general farm and stock raising.

"Second. I further find that the consideration for said lease contract was the sum of $20,000, evidenced by his certain promissory notes for $4,000 each, of even date with said lease contract, and executed and delivered by W. T. Moore in favor of Catherine Stengele; said notes were numbered 1 to 5; note No. 1 was due and payable November 1, 1907, and each of said notes was due one year thereafter, repectively, until paid, the last note being due and payable November 1, 1911, each of said notes bearing 8 per cent. interest from maturity, with an additional sum of 10 per cent. on the principal and interest as attorney's fees in the event default was made in the payment of said notes as they became due, and, further, that the said W. T. Moore gave and granted a first mortgage lien on all of the rice and other farm products raised on said lands, including cattle and other stock, during the life of said lease contract, to secure the payment of said notes.

"Third. I further find that it was agreed between the said Catherine Stengele and W. T. Moore, claimant, that in the event said notes above described were not paid within 15 days after each became due, the said Catherine Stengele should have the right at her option to declare said lease contract terminated and to foreclose her lien, as provided in said lease contract, in which event the said W. T. Moore agreed to vacate said premises.

"Fourth. I further find that Catherine Stengele and W. T. Moore, on the 6th day of March, 1907, made and entered into another contract in writing, under the terms of which the said Catherine Stengele leased to W. T. Moore, for a term of five years, a strip of land 80 feet wide, beginning at Pine Island at a point where the old Cooley pumping station was located, thence southward on the old Cooley right of way through the lands jointly owned by Stengele and Van Wormer, and also through the lands owned individually by said Stengele, for the purpose of building and constructing and maintaining a canal for irrigation purposes for a term of five years, ending December 31, 1911, and under the terms of said lease the said W. T. Moore obligated, agreed, and bound himself to build, construct, and maintain said canal at his own expense during said term of five years, also to erect, build, construct, and operate a pumping plant at his own expense on Pine Island bayou, at or near the old Cooley pumping station, and to furnish and supply all water for the purpose of watering certain rice lands particularly described in said contract.

"Fifth. I further find that Catherine Stengele and W. T. Moore made and entered into a written contract on the 10th day of June, 1907, under the terms of which Catherine Stengele advanced to W. T. Moore the sum of $1,825, as evidenced by the certain promissory note of W. T. Moore for said sum of even date with said contract, said note bearing interest at the rate of 10 per

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

cent. per annum, and payable on the 1st day of December, 1908, which said sum of money was advanced by Catherine Stengele to W. T. Moore for the purpose of enabling Moore to purchase and install one certain boiler, engine, pump, and equipment at a point on Pine Island bayou where the Stengele canal begins; and I further find that said pump and engine for which Miss Stengele advanced said $1,825 is the property in controversy. And in this connection I find the canal was never completed as provided in the contract of March 6, 1907.

"Sixth. I further find that under the terms of said contract Catherine Stengele gave W. T: Moore the option to renew his lease contract, dated March 6, 1907, for the Stengele farm for an additional term of five years, upon the same terms and conditions of said lease contract for the Stengele farm as of date March 6, 1907, provided the terms of said lease contract were fully carried out to the satisfaction of Miss Stengele.

"Seventh. I further find that under the terms of said contract of June 10, 1907, said W. T. Moore bargained, sold, and delivered to Miss Stengele an undivided one-half interest in and to the boiler and engine in controversy.

"Eighth. I further find, under the terms of said contract dated June 10, 1907, that the said W. T. Moore agreed, obligated, and bound himself to cultivate the Stengele farm and operate said Stengele rice canal faithfully and well, according to the terms and stipulations of the lease contract entered into by the parties on the 6th day of March, 1907, and in the event the said Moore should vacate said premises before the expiration of five years, the term of said lease contract, he thereby forfeited all right, title, and interest that he may have had in and to the boiler and engine in controversy, and that thereupon the said Catherine Stengele should become the sole owner of the property in controversy.

"Ninth. I further find that said contract of June 10, 1907, was intended to further secure said Catherine Stengele in the performance of the two lease contracts of date March 6, 1907, on the part of the said W. T. Moore, and in the payment of the notes for the rental of the Stengele farm and the enforcement of the mortgages executed and delivered by the said Moore to Stengele, and to further secure the said Catherine Stengele in the performance by Moore of all the duties, obligations, and agreements that he had theretofore bound himself to perform, complete, and carry out, and, further, that the said Moore should be entitled to own and possess an undivided one-half interest in the boiler and engine in controversy after operating expenses should have been paid, and after the payment of two notes, one for the sum of $2,000, dated 6th day of March, 1907, and one note for $1,825, dated 10th day of June, 1907, together with all interest thereon in favor of said Catherine Stengele, or order, subject, however, to the performance of the contracts dated March 6, 1907.

"Tenth. I further find that E. F. Moore, father of claimant, W. T. Moore, was adjudged a bankrupt during the year 1906, and had not secured a discharge from his debts during the year 1907, and for this reason the said E. F. Moore conducted his business for the year 1907 in the name of claimant, W. T. Moore; that while the lease contract of March 6, 1907, and the other contracts and notes hereinbefore mentioned were signed by the claimant, W. T. Moore, they were in fact the contracts and obligations of the said E. F. Moore; that all the contracts and transactions during the year 1907, with reference to the farm, canal, and machinery herein involved, were the contracts and transactions of the said E. F. Moore, and the claimant, W. T. Moore, was not, at the time of the filing of claimant's oath and bond in this proceeding, nor at any other time, the owner of or entitled to the possession of the machinery involved in this suit.

"Eleventh. I further find that the property in controversy remained on the Stengele land from the day and date that the Moores abandoned the Stengele farm and canal up to and including the day and date of the execution of the claimant's oath and bond by W. T. Moore, to wit, the 31st day of January, 1910, and that during said time said property was being claimed by Miss Stengele, and after her death by her independent executors, and that the said Miss Stengele during her lifetime exercised actual control over said property, was in actual possession thereof, and at all times up to her death claimed to be the owner thereof, and her executors claimed ownership of said property after her death up to the day and date of the sale of said property by them to the plaintiff, A. P. Rabb.

"Twelfth. I further find that on the 8th day of January, 1910, Hugh Jackson, A. L. Davis, and D. W. Bartholomew, who were then the duly qualified and acting independent executors of the estate of Catherine Stengele, deceased, sold said property in controversy to the plaintiff, A. P. Rabb, with their warranty to the said A. P. Rabb, as such independent executors, warranting the title to the said Rabb in and to the property in controversy.

"Thirteenth. I further find that the reasonable market value of the property in controversy on January 31, 1910, at the head of the Stengele canal on Pine Island bayou, where the property in controversy was situated, when the claimant's oath and bond was filed, was and is the sum of $1,000.

"Fourteenth. I further find that the reasonable rental value of said property was and is the sum of $5 per day.

"Fifteenth. I further find that Mrs. Catherine, or Catherina, Stengele and Miss Jeannette Stengele are one and the same person, and that she is dead, and that on January 8,

1910, Hugh Jackson, A. L. Davis, and D. W. Bartholomew had duly qualified and were acting as her independent executors."

[1] Motion has been made to strike out the assignments of error on the ground that the errors complained of were not embraced in a motion for a new trial, as required by rule 24 (142 S. W. xii), adopted January 24, 1912. The court prepared and filed conclusions of fact and law, which are in the record. Rule 71a, District Court Rules, as amended January 24, 1912 (145 S. W. vii), is as follows: "A motion for a new trial shall be filed in all cases where parties desire to appeal from a judgment of a trial court, or sue out a writ of error in the cause, unless the error complained of is fundamental, except in such cases as the statute does not require a motion for a new trial." This exception was added by the amendment. We are inclined to agree with the holding of the Court of Civil Appeals of the Fourth District in Am. Rio Grande Land & Irrigation Co. v. Mercedes Plantation Co., 155 S. W. 286, that under article 1333, R. S. 1895, a motion for new trial is not necessary to an appeal when the case is tried by the court and conclusions of fact and law prepared and filed. See, also, Greer v. Featherstone, 95 Tex. 654, 69 S. W. 69. The motion is overruled.

[2] By the first assignment of error appellant complains of the 10th finding of fact set out above. W. T. Moore testified that he acquired the property by purchasing it with the intention of using it, and E. F. Moore testified that it belonged to W. T. Moore, but there was an abundance of testimony to show that E. F. Moore was operating in his son's name, on account of his insolvent condition, and that he was the real owner of the property. The court, trying the facts as a jury, was the judge of the credibility of the witnesses and the weight to be given the evidence, and its findings on the facts will not be disturbed when supported by the evidence. Taking the whole testimony, and not isolated pieces or parcels of it, it was sufficient to authorize the conclusion of fact objected to. The same may be said as to the eleventh conclusion of fact, which is objected to by the second assignment of error.

It is not necessary to set out the evidence. We have examined it carefully, and find that it authorized the conclusion of the trial court.

We cannot agree with the further contention of the appellant, based upon the evidence, that the great weight and preponderance of the evidence shows that the machinery belonged to the claimant, W. T. Moore, and that the court erred in holding, in its conclusions of law that the appellant was not entitled to a judgment. The court was the judge of the weight of the evidence, and a mere preponderance, or what we might regard as a great weight and preponderance of the evidence against the trial court's findings of fact, would not authorize this court to set aside such findings. As with the verdict of a jury, it is only when the weight and preponderance of the evidence against such findings, whether by the court or a jury, is so great that it cannot be accounted for upon any proper view of the evidence, and is manifestly wrong, that the appellate court is authorized to take the decision of questions of fact from the trial court or a jury and substitute its own judgment for theirs. There is nothing of that kind to call for any such action in this case. The assignments of error of the appellant must be overruled.

[3, 4] Appellee by cross-assignments complains that the trial court erred in refusing to render judgment for appellee, A. P. Rabb, for $5 per day for the rental value of the property from the date of the filing of the claimant's bond to the trial of the case, and asks this court to reform the judgment so as to adjudge to appellee, in addition to the $1,000 adjudged to him as the value of the property, together with 6 per cent. interest thereon from the time appellant took possession of the property under the claimant's affidavit and bond, and 10 per cent. damages, as provided by Rev. St. 1895, art. 5304 (Rev. St. 1911, art. 7787), for all of which the court did, in fact, render judgment, a sum equal to $5 a day from January 31, 1910, to July 6, 1912, as the reasonable value of the rent and hire of the property, as found by the court, which would be in round numbers $4,500. This for the rent and hire of property valued at $1,000. The statute did not authorize the recovery of the value of the rent and hire, but provides only that judgment shall be rendered for the value of the property, with 10 per cent. damages if the claimant fails to establish his right. If the claimant elects to satisfy this judgment by the payment of the amount adjudged, he may do so, but if he elects, which he may do, to satisfy the judgment by a return of the property, he must pay, in addition, the reasonable value of its rent or hire while held by him under the claimant's bond. For this purpose it has been held that the trial court should, in its judgment, fix the amount of such rent or hire, in order that the claimant may know how much he must pay therefor, in case he elects to satisfy the judgment by a return of the property. R. S. 1895, arts. 5288, 5307, 5308, 5310; Ft. Worth Pub. Co. v. Hitson & Reed, 80 Tex. 216, 14 S. W. 843, 16 S. W. 551; Keating v. Julian, 23 S. W. 607; Teague v. Ryan, 43 Tex. Civ. App. 565, 96 S. W. 936. This the court should have done in this case. But that is not the error complained of. In no event was the appellee entitled to recover by the terms of the judgment, to be enforced by execution, the amount of rent or hire claimed in the assignment, enormous in proportion to the value of the property. The assignment of error does not present the

point that the court should have found by the judgment the reasonable value of the rent or hire of the property, for the purpose indicated, nor are we asked to do so. The cross-assignment is without merit, and must be overruled.

There is no error presented requiring reversal of the judgment, which is therefore affirmed.

Affirmed.